NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

                                                  :
STEVEN MOROWSKI,                                  :
                                                  :
                 Plaintiff,                       :
                                                  :        Civil Action No. 08-5986 (JAG)
                 v.                               :
                                                  :              **OPINION**
MEGA BLOKS, INC. et al.,                          :
                                                  :
                 Defendants.                      :
_____:

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion to dismiss the Complaint by

defendants Mega Brands, Inc., Mega Brands America, Inc., and MB US, Inc. ("MB")

(collectively "Defendants"), pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim upon

which relief can be granted.  For the reasons set forth below, Defendants' motion to dismiss shall

be denied.

### I.  BACKGROUND

Plaintiff, Steven Morowski is an individual residing at 12179 NW 72nd Street, Parkland,

Florida.  (Complaint at ¶ 3.)  MEGA Bloks, Inc. is a corporation organized and existing under the

laws of Canada with its principal place of business at 4505 Hickmore, Montreal, Quebec,

Canada.  (Id. at ¶ 4.)  MEGA Bloks, Inc. maintains a place of business at 6 Regent Street,

Livingston, NJ.  (Id. at ¶ 5.)  MB US, Inc. is a corporation organized and existing under the laws

of Delaware.  (Id. at ¶ 6.)  MB US, Inc. is a wholly owned subsidiary of Mega Bloks, Inc., and

maintains a place of business at 6 Regent Street, Livingston, NJ.  (Id. at ¶ 7.)  Mega Brands

America, Inc. is a foreign corporation authorized to do business in the State of New Jersey and

maintains a place of business at 6 Regent Street, Livingston, New Jersey.  (Id. at ¶ 8.)  Mega

Brands, Inc. is a foreign corporation authorized to do business in the State of New Jersey and

maintains a place of business at 6 Regent Street, Livingston, New Jersey.  (Id. at ¶ 9.)

Mega Bloks, Inc., MB U.S., Inc., Mega Brands America, Inc., and Mega Brands, Inc.

jointly controlled the terms and conditions of Plaintiff's employment, and each were jointly

Plaintiff's employer.  (Id. at ¶¶ 10-14.)  Jean Francois Albert, Vice President of Human

Resources for MB, is an individual and resident of Quebec, Canada.  (Id. at ¶ 15.)  Eric Phaneuf,

Vice President and General Manager of MB, is an individual and resident of Quebec, Canada.

(Id. at ¶¶ 16, 44.)  Marc Boily, an official within MB's Human Resources Department, is an

individual and resident of Canada.  (Id. at ¶¶ 17, 41.)

Defendants are in the business of designing, manufacturing, and selling construction toys

for children.  (Id. at ¶ 24.)  Plaintiff began his employment with Rose Art Industries, Inc. ("Rose

Art") in or about January 2003.  (Id. at ¶ 27.)  MB purchased Rose Art in, or about, July 2005.

(Id. at ¶ 28.)  Plaintiff's role within MB was materially the same as it had been with Rose Art.

(Id. at ¶ 29.)  From 2003 to 2006 Plaintiff was a Product Manager for Rose Art, and then for MB.

(Id. at ¶ 30.)  In or about April 2006, Plaintiff became Vice President, Research & Development

for MB.  (Id. at ¶ 31.)  Plaintiff performed many of his duties for MB in the State of New Jersey

from MB's office in Livingston, NJ.  (Id. at ¶ 32.)

In or about May 2006, a lawsuit was commenced in the United States District Court,

Southern District of New York, by the individual owners of Rose Art against MEGA Bloks, Inc.,

and MB US., Inc. (the "Rose Art lawsuit"). (Id. at ¶ 33.) In, or about, August 2007, MB's

attorneys in the Rose Art lawsuit asked Plaintiff to sign an affidavit relating to the Magnetix

brand of toys. (Id. at ¶ 34.) Plaintiff understood that this affidavit was to be utilized in the Rose

Art lawsuit. (Id. at ¶ 35.) Plaintiff refused to sign the affidavit because it contained untrue

statements. (Id. at ¶ 36.) Plaintiff advised MB that the affidavit contained untrue statements.

(Id. at ¶ 37.) Plaintiff informed MB that he believed that it was illegal to sign an affidavit that

contained untrue statements. (Id. at ¶ 38.) Plaintiff believed that it was illegal to sign a sworn

statement that he knew contained false information and that to do so was in violation of law and

entirely incompatible with the public health, safety, and welfare. (Id. at ¶ 39.)

Throughout August 2007, Defendants pressured Plaintiff to sign the false affidavit and

subjected Plaintiff to false accusations in retaliation for Plaintiff's refusal to sign the false

affidavit. (Id. at ¶ 40.) Defendants confiscated Plaintiff's laptop computer and changed the locks

on Plaintiff's office in Livingston, NJ. (Id.) Defendants also falsely accused Plaintiff of stealing

confidential information. (Id.) In or about late August 2007, Marc Boily, told Plaintiff to speak

to MB's attorney about the Rose Art lawsuit. (Id. at ¶ 41.) Plaintiff asked Jean Francois Albert

about his employment status with Defendants and was told that the affidavit is all he is allowed

to work on. (Id. at ¶ 42.)

On or about September 4, 2007, Plaintiff met with Albert and Boily at the Miami airport

at their request, at which time he informed them that he would not sign the untruthful affidavit.

(Id. at ¶ 43.) Albert and Boily accused Plaintiff, falsely, of having stolen company information.

(Id.) Boily and Albert also requested that they search Plaintiff's house and threatened to contact

the sheriff, if Plaintiff did not consent. (Id.) Plaintiff was fearful and permitted them to search

his home.  (Id.)  Boily and Albert found no improper information during the search of Plaintiff's

home.  (Id.)

The following day, on or about September 5, 2007, Defendants retaliated against Plaintiff

because of his refusal to sign the untrue affidavit.  (Id. at ¶ 44.)  On that day, Defendant Phaneuf,

stripped Plaintiff of his duties and effectively terminated Plaintiff's employment.  (Id.)

Defendants terminated Plaintiff's employment, in retaliation against him, because he objected to

Defendants' instruction to sign an untruthful affidavit, as part of the Rose Art lawsuit.  (Id. at ¶

46.)

On August 12, 2008, Plaintiff filed a Complaint in the Superior Court of New Jersey,

Law Division.  Plaintiff alleges that Defendants violated the New Jersey Conscientious

Employee Protection Act ("CEPA") by retaliating against him due to his refusal to sign a false

affidavit.  Defendants removed this action to the District of New Jersey.

## II.  STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the

claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 127 S.

Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the

decision in other respects).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do."  Twombly, 127 S. Ct. at 1964-65 (internal citations

omitted); see also FED. R. CIV. P. 8(a)(2).  "Factual allegations must be enough to raise a right to

relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citations omitted). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1357 at 340 (2d ed. 1990)).

A court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994); see also Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 n.8 (3d Cir. 1997). "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974; see also In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397 (3d Cir. 2000) (stating that a complaint should be dismissed only if the alleged facts, taken as true, fail to state a

claim).

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007).  "Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  "[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'"  Id. (emphasis in original) (quoting Shaw v Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)).  Any further expansion beyond the pleading, however, may require conversion of the motion into one for summary judgment.  FED. R. CIV. P. 12(d).

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Ashcroft v. Iqbal et al., 129 S.Ct. 1937, 1950 (2009).

### III.  ANALYSIS

"The [New Jersey] Legislature enacted CEPA to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J. 2003).

The statute provides in relevant part: "An employer shall not take any retaliatory action against an employee because the employee does any of the following: Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:  (1) is in violation of a law, or a rule or regulation promulgated pursuant to law ...; (2) is fraudulent or criminal; or (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.  N.J. STAT. ANN. § 34:19-3c.

"A plaintiff who brings a cause of action pursuant to N.J.S.A. 34:19-3c must demonstrate that: (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action." Dzwonar, 828 A.2d at 900.

In their motion to dismiss, Defendants do not contest that Plaintiff's Complaint states facts which provide support for the first and second elements required to state a claim under CEPA.  It was reasonable for Plaintiff to believe that it was illegal to sign a sworn affidavit containing untrue assertions for use in a lawsuit against his employer, and that to do so would be in violation of law and entirely incompatible with the public health, safety, and welfare.

(Complaint at ¶¶ 35, 43.)[1]  Plaintiff's Complaint also alleges that he refused to sign the allegedly

illegal affidavit, thus satisfying the second element required to state a claim under CEPA.  (Id.)

Defendants argue instead that Plaintiff has failed to satisfy the third and fourth elements of a

CEPA cause of action.

Specifically, Defendants contend that Plaintiff fails to adequately plead element three

because the facts of the Complaint are insufficient to prove a "retaliatory employment action", as

defined by the statute.  According to Defendants, Plaintiff does not satisfy the required fourth

element of a CEPA claim because Plaintiff fails to allege a causal connection between the alleged

whistle-blowing and the purported retaliation.

## A.    Retaliatory Action

According to Third Circuit case law, the CEPA, N.J. Stat. Ann. § 34:19-2(e), defines

"retaliatory action" as: "the discharge, suspension or demotion of an employee, or other adverse

employment action taken against an employee in the terms and conditions of employment."

Caver v. City of Trenton, 420 F.3d 243, 255 (3d Cir. 2005).  New Jersey courts have interpreted

N.J. STAT. ANN. § 34:19-2(e) as "requiring an employer's action to have either impacted on the

employee's 'compensation or rank' or be 'virtually equivalent to discharge' in order to give rise

to the level of a retaliatory action required for a CEPA claim." Klein, 871 A.2d at 691.

Defendants argue that Plaintiff's Complaint alleges that Defendants stripped him of his

---

[1]  "CEPA requires judicial resolution of threshold legal issues respecting existence of a statutory, regulatory or other clear mandate of public policy before the trier of fact determines whether an employee has been retaliated against for acting upon an objectively reasonable belief of the existence of such clear mandate by objecting to or refusing to perform acts in violation of the mandate." Klein v. University of Medicine and Dentistry of New Jersey, 871 A.2d 681, 688 (N.J. Super. Ct. App. Div. 2005).

duties during the pendency of a corporate investigation.  In the Complaint, however, Plaintiff

alleges that in August 2007 he was asked by MB's attorneys in the Rose Art lawsuit to sign an

affidavit relating to the Magnetix Brand of Toys.  (Complaint at ¶ 34.)  The affidavit was to be

used in a lawsuit against his employer.  (Id. at ¶ 35.)  Plaintiff refused to sign the affidavit

because it contained untrue statements, and advised his employer of this fact.  (Id. at ¶¶ 37-38.)

Plaintiff alleges that in response to his refusal to sign the false affidavit, Defendants pressured

him to sign the affidavit and subjected him to false accusations in retaliation for the Plaintiff's

refusal.  (Id. at ¶ 40.)  Defendants confiscated Plaintiff's laptop computer and changed the locks

on the Plaintiff's office in Livingston, NJ.  (Id.)  Defendants also accused the Plaintiff of stealing

confidential information.  (Id.)  Defendants contend that these actions were taken concurrently

with a corporate investigation and thus were not retaliatory.

　　　According to New Jersey courts, "'[r]etaliatory action' does not encompass action taken

to effectuate the 'discharge, suspension or demotion' but rather "speaks in terms of completed

action." Klein, 871 A.2d at 691.  Plaintiff's Complaint, however, makes no mention of a

corporate investigation, but alleges that he was first asked to sign a false affidavit for use in a

lawsuit.  Plaintiff alleges that when he refused Defendants' request that he sign a false affidavit

and informed the Defendants of his refusal to do so, that, in retaliation, Defendants levied

allegations against Plaintiff and restricted his access to company facilities and resources.

　　　New Jersey courts have interpreted "retaliatory action" to encompass a wide range of

employer conduct towards an employee: "Besides discharges, suspensions, and demotions, which

clearly affect an employee's compensation and sometimes job rank, CEPA retaliation also

includes 'other adverse employment action' taken against the employee's 'terms and conditions

of employment.' Terms and conditions of employment 'refer[] to those matters which are the

essence of the employment relationship,' and include further serious intrusions into the

employment relationship beyond those solely affecting compensation and rank.  The commonly

understood meaning of the phrase includes, for example, length of the workday, increase or

decrease of salaries, hours, and fringe benefits, physical arrangements and facilities, and

promotional procedures." Beasley v. Passaic County, 873 A.2d 673, 685-86 (N.J. Super. Ct.

App. Div. 2005).

The New Jersey Supreme Court has stated, in dictum, that retaliation under CEPA "need

not be a single discrete action." Green v. Jersey City Bd. of Educ., 828 A.2d 883, 891 (N.J.

2003).  An "adverse employment action taken against an employee in the 'terms and conditions

of employment,' N.J.S.A. 34:19-2e, can include ... many separate but relatively minor instances

of behavior directed against an employee that  may not be actionable individually but that

combine to make up a pattern of retaliatory conduct." Id.

Defendants also contend that Plaintiff does not assert that he was "demoted, terminated,

or taken off payroll", as required under CEPA. (Def. Brief at p. 12.)  Defendants' view of the

facts is at odds with the language contained in the Complaint.  "On September 5, 2007,

Defendant, Phaneuf...stripped the Plaintiff of his duties and the Defendants effectively terminated

the Plaintiff's employment.  Accordingly, Defendants terminated the Plaintiff's employment in or

about September 2007."  (Complaint at ¶¶ 44-45.)

At this stage of the case–in a Rule 12(b)(6) motion–this Court is required to accept

Plaintiff's well-pled allegations as true.  "When there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an

entitlement of relief." Iqbal, 129 S.Ct. at 1950.

**B.      Causal Connection Between Retaliation and Whistle-Blowing**

Defendants assert that Plaintiff does not establish a causal connection between the Defendants' alleged retaliatory conduct and Plaintiff's whistle-blowing activity.  In the Complaint, Plaintiff states unequivocally that he was terminated as a result of his refusal to sign the false affidavit.  Plaintiff states in the Complaint: "On or about September 5, 2007, Defendants swiftly retaliated against Plaintiff because of his refusal to sign the untrue affidavit. On September 5, 2007, Defendant, Phaneuf...stripped the Plaintiff of his duties and the Defendants effectively terminated the Plaintiff's employment."  (Complaint at ¶ 44.)  This Court finds that Plaintiff's allegations establish a causal connection between Defendants' alleged retaliation and Plaintiff's whistle-blowing activity (refusal to sign the false affidavit and informing the Defendants of his refusal).

## IV.  CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the Complaint, pursuant to FED. R. CIV. P. 12(b)(6), shall be denied.  Plaintiff adequately pleads the third and fourth elements of his CEPA claim.  This claim shall proceed.

> S/Joseph A. Greenaway, Jr.
> JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date:  September 24, 2009